## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA
## CHARLESTON

**MICHAEL ELLIS,**

      **Plaintiff,**

v.                          **Case No. 2:15-cv-o5698**

**KANAWHA COUNTY PUBLIC LIBRARY,**

      **Defendants.**

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the court is the defendant's Motion for Summary Judgment (ECF No. 79). This matter is assigned to the Honorable Thomas E. Johnston, Chief United States District Judge, and it is referred to the undersigned for submission of proposed findings and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

## RELEVANT PROCEDURAL HISTORY

This matter is proceeding only on the plaintiff's claims under Title VII of the Civil Right Act of 1964, 42 U.S.C. § 2000e *et seq.*, alleging that the defendant discriminated against him on the basis of race concerning its electronic communications policy and subjected him to retaliation when he was placed on a paid suspension for seven days after he complained about the allegedly discriminatory policy. Following a period for discovery, the defendant timely filed a Motion for Summary Judgment, and accompanying exhibits (ECF No. 79), and a Memorandum of Law in support thereof (ECF No. 80).

Pursuant to the holding of *Roseboro v. Garrison,* 528 F .2d 309 (4th Cir. 1975), the *pro se* plaintiff was notified that he had a right and obligation to file a response to the motion for summary judgment filed by the defendant, and could submit affidavits or

statements subject to the penalties of perjury, exhibits, or other legal or factual material supporting his position in the case.  On January 8, 2018, the plaintiff filed his Brief in Opposition to the Motion for Summary Judgment, with exhibits. (ECF No. 84). On January 12, 2018, the defendant filed a Reply Brief (ECF No. 85).  This matter is ripe for adjudication.

## **STANDARD OF REVIEW**

In evaluating summary judgment motions, Rule 56(a) of the Federal Rules of Civil Procedure provides:

> A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought.  The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a) (2010).  Material facts are those necessary to establish the elements of a party's cause of action.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim.  *Celotex,* 477 U.S. at 322-23.  The moving party has the burden of establishing that there is an absence of evidence to support the nonmoving party's claim.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).  Once the moving party demonstrates such a lack of evidence, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial.  *Id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986).  Accordingly, summary judgment will generally be granted unless a reasonable jury could render a verdict for the non-moving party on the evidence presented.  *Anderson,* 477 U.S. at 247-48.

A court must not resolve disputed facts or weigh the evidence, and may not make determinations of credibility. *Russell v. Microdyne Corp., 65 F .3d* 1229, 1239 (4th Cir. 1995); *Sosebee v. Murphy,* 797 F.2d 179, 182 (4th Cir. 1986). Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and to have all internal conflicts resolved in his or her favor. *Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir. 1979). Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962). However, the party opposing the motion may not rely upon mere allegations or denials of the pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Sprenkle v. Hartford Life Ins. Co.,* 84 F. Supp.2d 751 (N.D. W. Va. 2000).

<u>**STATEMENT OF UNDISPUTED FACTS**</u>

The Kanawha County Public Library (hereinafter "the Library" or "the defendant") consists of the main branch in Charleston, West Virginia, with additional branches in Belle, Clendenin, Cross Lanes, Dunbar, Elkview, Glasgow, Marmet, Nitro, Sissonville, and St. Albans. In December 2010, the plaintiff was hired on a part-time basis as a Library Assistant I at the Dunbar branch. (ECF No. 79, Appx. A at 13). As a Library Assistant I, the plaintiff's job duties included assisting customers, sorting and shelving books, checking in books, and assisting in other areas of the Library as needed. (*Id.* at 13 and Appx. B). In the course of his duties, the plaintiff was required to use the Library's computer system to check in books, look up references, and assist in putting on activities conducted by the Library. (*Id.* at 38).

The Library's Board of Directors adopted an electronic communications (or computer use) policy ("the policy"), which was last updated in May 2009. (ECF No. 79,

Appx. C at 8-10).  The policy provides, in pertinent part, that "non-business use of the email system is acceptable, but only if the level of use is occasional, does not interfere with an employee's professional responsibilities or diminish productivity, and does not violate this [p]olicy."  (*Id.* at 8).  A similar provision exists concerning use of the Internet for non-business purposes.  (*Id.* at 9).  The policy further provides that "Internet access is a privilege and not an entitlement.  Accordingly, once granted, Internet access can be removed at the request of a supervisor if it is being abused, used improperly, or otherwise interferes with the performance of the employee's responsibilities."  (*Id.*)  The plaintiff acknowledged receipt of and training concerning this policy on January 5, 2011.  (*Id.* at 11).

The undisputed evidence of record demonstrates that the policy permitted all Library employees to use the Library's computers and internet for personal reasons during non-work time, and during work time, provided that such use did not interfere with the employee's productivity or job performance.  (ECF No. 79, Appx. C, Alford Decl., ¶ 4; Brumfield Decl., ¶ 4; Smook Decl., ¶ 4; Clark Decl., ¶ 4; Russell Decl., ¶ 4; Stevens Decl., ¶ 4).  However, the plaintiff interpreted the policy to permit employees to "use the computer for whatever reason they wanted."  (ECF No. 79, Appx. A at 21).

On April 27, 2012, then-acting branch manager Linda Brumfield (hereinafter "Brumfield") sent an e-mail to all Dunbar branch staff members reminding them that personal use of the computers was permitted only during non-work time; that is, during employee breaks and lunch time.  (ECF No. 79, Appx. B at 4).  In the e-mail, Brumfield further stated that "there is always something that needs to be done[.]" (*Id.*)  Thus, she suggested that idle employees approach her, or other employees, to offer assistance with various tasks and projects.  (*Id.*)  As acknowledged by all of the

4

other staff, the April 27, 2012 e-mail was not intended to modify, and did not modify the electronic communications policy in effect at that time.  (ECF No. 79, Appx. C, Alford Decl., ¶ 7; Brumfield Decl., ¶ 6; Smook Decl., ¶ 6; Clark Decl., ¶ 10; Russell Decl., ¶ 10; Stevens Decl., ¶ 10).

Shortly after receiving the e-mail, the plaintiff approached Brumfield to express his concern that the requirement that idle employees "ask her about finding something to do" was discriminatory.  (ECF No. 79, Appx. A at 25, 61).  Specifically, the plaintiff believed that the policy was discriminatory because "no matter what the reason was for, . . . the two white could use [the computers and] [that] [black employees[ could use] [the computers] only on breaks . . . and have to check with the manager."  (*Id.* at 46-47).  However, the plaintiff does not dispute that the April 27, 2012 e-mail does not require only African-American employees to seek authorization prior to using the computers for personal reasons during work time.  (*Id.* at 49, 57).  In fact, during his deposition, the plaintiff acknowledged that this was "just his opinion" and "just the way [he felt]."  (*Id.* at 46, 54).  The plaintiff further acknowledged that he was never disciplined for using the Library's computers for personal reasons during work time; nor were any other employees.  (*Id.* at 60; Alford Decl., ¶ 9; Brumfield Decl., ¶ 8; Smook Decl., ¶ 8; Clark Decl., ¶ 8; Russell Decl., ¶ 8; Stevens Decl., ¶ 8).

The plaintiff further voiced his concerns about the April 27, 2012 e-mail to Marsha Alford ("Alford"), the Library's Human Resources Manager, in May or June of 2012.  (*Id.* at 62).  It is undisputed that the plaintiff was not disciplined for voicing such concerns at that time.  (*Id.* at 73).

On August 27, 2012, Dana Smook ("Smook") was hired as the manager of the Dunbar branch.  On November 5, 2012, the plaintiff suggested to Smook that there was

discrimination at the Dunbar branch. (ECF No. 79, Appx. C, Smook Decl., ¶ 9). Smook, in turn, reported this to Alford, who conducted an investigation. (*Id.,* ¶¶ 9, 10; Alford Decl., ¶ 10). On November 5, 2012, Alford spoke to the plaintiff about his allegations, and she met with him in person on November 7, 2012. (*Id.,* Alford Decl., ¶ 11). During that meeting, the plaintiff requested that the rules and regulations for personal use of the Library's computers and internet be clarified for all staff. (*Id.,* ¶ 12). Thus, Alford requested that Smook address the issue at a staff meeting on November 28, 2012. (*Id.,* ¶ 13; Smook Decl., ¶ 10).

The staff meeting on November 28, 2012, was attended by the plaintiff, Brumfield, Giselle Russell, Niki Byers, and Kelly Stevens. (ECF No. 79, Appx. C, Brumfield Decl., 9; Smook Decl., ¶ 11; Russell Decl., ¶ 14; Stevens Decl., ¶ 14). Two other employees, Cameron Clark and Sheila Young, were not in attendance, as they were scheduled to be off work that day. (*Id.,* Smook Decl., ¶ 11; Clark Decl., ¶¶ 15-16). Among other things, Smook attempted to discuss the electronic communications policy with the staff. However, the plaintiff repeatedly attempted to "talk-over" Smook and, admittedly, became "kind of loud," as he referred to the "stupidity" of the policy. (ECF No. 79, Appx. A at 75-77, 81; ECF No. 79, Appx. C, Brumfield Decl., ¶¶ 10-11; Smook Decl., ¶¶ 12-13; Russell Decl., ¶¶ 15-16; Stevens Decl., ¶¶ 15-16). As the plaintiff became increasingly disruptive, Smook asked him to leave the meeting and to discuss the matter with her privately. The plaintiff initially refused to do so, but ultimately complied. (ECF No. 79, Appx. A at 76-77; Appx. C, Brumfield Decl., ¶ 12; Smook Decl., 1114; Russell Decl., ¶ 17; Stevens Decl. ¶ 17).

After the staff meeting, Smook prepared a summary of the meeting and sent it to Alford. (ECF No. 79, Appx. C, Alford Decl., ¶ 14 and Attach. D; Smook Decl., ¶ 16 and

Attach. A). Alford met with the plaintiff the following day, November 29, 2012, to discuss his conduct during the staff meeting, and the plaintiff was placed on a paid suspension pending further investigation. (ECF No. 79, Appx. C, Alford Decl., ¶¶ 15-16). One week later, Alford concluded her investigation, determining that the plaintiff's behavior at the November 28, 2012 staff meeting was "highly disruptive, unprofessional, insubordinate, and created an uncomfortable work environment for the staff members who were present." (ECF No. 79, Appx. C, Alford Decl., ¶ 18). Alford made the following findings:

> On November 29, 2012, Ms. Alford met with Mr. Ellis to discuss the events that took place at the staff meeting with him. Mr. Ellis did not dispute that he had behaved at the staff meeting as described above and stated his belief that he has a right to behave that way toward his supervisor if in his opinion it is justified. He stated that he understood what Ms. Smook was saying but that he does not know how she will enforce this and that "this policy is stupidity." At no time did Mr. Ellis show remorse or concern regarding his behavior at the staff meeting or acknowledge that his supervisor and the Library have the right to impose reasonable rules on behavior in the workplace. He stated that some people may find him intimidating when he speaks in a loud voice and is upset about something.

> * * *

> Ms. Alford interviewed all of the staff members present at the staff meeting of November 28th. Upon conclusion of the investigation, it was determined that Mr. Ellis' reaction to rules that apply to all employees is inappropriate, and his behavior at the staff meeting is insubordinate and unprofessional. This behavior is unacceptable and will not be tolerated.

(ECF No. 79, Appx. C, Alford Decl., ¶¶ 17-18 and Attach. C). The plaintiff was issued a written warning for his conduct at the November 28, 2012 meeting, but was permitted to return to work. (*Id.,* ¶¶ 19-22 and Attach. C).

## ANALYSIS

**A.    The defendant is entitled to judgment as a matter of law on the plaintiff's Title VII claim concerning the electronic communications policy.**

As noted in the defendant's Memorandum of Law, Title VII makes it unlawful for an employer to "discharge any individual, or otherwise . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1).  In order to establish a *prima facie* case of race discrimination under Title VII, the plaintiff must demonstrate: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class.  *Coleman v. Maryland Ct. of Appeals,* 626 F.3d 187, 190 (4th Cir. 2010).  Additionally, the Fourth Circuit has defined an "adverse employment action" as one which "adversely affects the terms, conditions, or benefits of the plaintiff's employment."  *James v. Booz-Allen & Hamilton, Inc.,* 368 F.3d 371, 375 (4th Cir. 2004) (quoting *Von Gunten v. Maryland,* 243 F .3d 858, 865 (4th Cir. 2001)).

In the Amended Complaint, the plaintiff alleges that acting branch manager, Linda Brumfield, established a policy that limited the use of Library computers by staff during work hours which was discriminatory in its application because the white employees were permitted to use the computers whenever they wanted (allegedly because they had official business to perform on the computers), while the black employees were not so permitted.  The plaintiff contends that the assertion that the white employees "had to do work [on the computers] for games and events" was untrue because these events "were only held every few months."  (ECF No. 18 at 3).  The

8

plaintiff further contends that the policy required the black employees to ask the white employees if they needed any help before they could use the computers on their non-work time.

As asserted by the defendant, however, the plaintiff has not produced any evidence to demonstrate that the computer use policy was implemented or applied in a discriminatory way to deny the plaintiff the ability to use the Library computers during work hours to perform the duties of his position.  The defendant's Memorandum of Law states:

> To the contrary, the record reflects that the Library's electronic communications policy provided, in relevant part, that "non-business use of the e-mail system is acceptable but only if the level of use is occasional, does not interfere with an employee's professional responsibilities or diminish productivity, and does not violate this [p]olicy and that "Internet access is a privilege and not an entitlement.  Accordingly one granted, Internet access can be removed at the request of a supervisor if it is being abused, used improperly, or otherwise interferes with the performance of the employee's responsibilities."  (Ellis Dep. Ex. 3).

(ECF No. 80 at 10).

The defendant further asserts that the plaintiff's deposition testimony clearly demonstrates that his ability to use the Library's computers to perform the duties of his position were never limited, and that he was never disciplined for personal use of the computers during work hours, even after the issuance of the April 27, 2012 Brumfield email.  (*Id.* at 11-12, citing Ellis Dep., ECF No. 79, Appx. A at 60, 69). Likewise, the defendant asserts that the plaintiff has not presented any evidence, other than his own opinion, showing that employees outside of his protected class were treated more favorably with respect to use of the Library computers.  (*Id.* at 12-13). Thus, the defendant asserts that the plaintiff cannot establish that he was deprived a "privilege of employment" sufficient to establish an adverse employment action and,

therefore, he cannot demonstrate a prima facie case of race discrimination under Title VII. (*Id.* at 12).

The plaintiff's Response, without any support therefore, attacks the veracity of the declarations offered by the defendant and summarily asserts that "THE 3 PROTECTIVE CLASS STAFF MEMBERS (Blacks) ARE ON RESTRICTED COMPUTER USE and the 3 white staff members, mgr. Linda, Giselle, and Kelly were told they have full computer use. I am not sure of staff member Nikki's nationality is, but she was also restricted." (ECF No. 84 at 4). The plaintiff also questions the need for the alleged policy change in the April 27, 2012 Brumfield e-mail because "THERE IS NO MENTION OF Computer ABUSE, OR USED IMPROPERLY OR INTERFERENCE OF WORK). These are the only reasons the policy should be changed." (*Id.* at 4-5). He further alleges that no other Library branch had "those type separated Restrictions." (*Id.* at 5).

The defendant's Reply brief asserts as follows:

> The record is, and always has been, devoid of any evidence whatsoever that Plaintiff, or any other member of his or any protected class, was deprived of use of the Library's computers on a discriminatory basis.

(ECF No. 85 at 1). The Reply further contends that the plaintiff relies only upon his own "subjective and unsupported interpretations." (*Id.*) The Reply further states:

> Plaintiff appears to equate his perceived right to unfettered access to the Library's computers for personal use during work time with his rights under Title VII. Obviously, the two are not comparable and . . . there is no evidence that Plaintiff's ability to use the Library's computers was restricted more than any other employee. At a minimum, there is no evidence that Plaintiff was denied any privileges of employment because of his race.

(*Id.* at 2). The defendant further contends that "Ms. Brumfield's request that <u>all</u> employees refrain from personal use of the Library's computers during work time was a reasonable and lawful directive and in no way abridged any employee's rights." (*Id.* at 3).

10

The Reply further asserts that the plaintiff has failed to point to any actual evidence that Brumfield's e-mail "was aimed solely towards African-American employees and/or that non-African-American employees were permitted *carte blanche* use of the Library's computers for personal reasons during work time." (*Id.*)  Moreover, as noted by the defendant, the plaintiff has failed to produce any evidence demonstrating that any protected class members were "on restricted computer use." (*Id.* at 3-4).  The defendant contends that "these points are, again, borne out by Plaintiff's admission in his deposition that he and every other employee of the Library's Dunbar branch continued to use the Library's computers for personal use during work time without repercussion after the issuance of the April 27, 2012 e-mail." (*Id.* at 6) (citing Ellis Dep., ECF No. 79, Appx. A at 60, 69).

The plaintiff has offered nothing more than his unsupported opinion that the defendant's electronic communication/computer use policy was applied in a discriminatory manner.  The undisputed evidence of record fails to create any genuine issue of material fact concerning the plaintiff's allegations of race discrimination resulting from the computer use policy.  Accordingly, the undersigned proposes that the presiding District Judge **FIND** that there are no genuine issues of material fact and the defendant is entitled to judgment as a matter of law on the plaintiffs Title VII claim concerning the computer use policy.

### B.    The defendant is also entitled to judgment as a matter of law on the plaintiff's retaliatory suspension claim.

The plaintiff also claims that he was unfairly suspended from work in retaliation for voicing concerns about the computer use policy.  His Amended Complaint states in pertinent part:

The staff meeting was staged and both black staff members were scheduled OFF WORK that day. At the meeting when the restrictive policy of internet use was being clarified to the staff members at the meeting it was verbally said by branch mgr. Dana Smook the 2 white staff members could use the internet during all work hours. When I tried to explain this was unfair and discriminatory against us 3 black coworkers the mgr. refused to discuss the issue and said I will speak with you in private. I tried to explain these meetings are for the discussions and refused to speak about it and when I tried to ask another question about the unfair policy and that NO OTHER LIBRARY BRANCH HAS EVER HAD THIS DISCRIMINATORY POLICY AND DOES NOT HAVE! I WAS ASKED TO LEAVE THE MEETING! After the meeting a call came from Human Resources mgr. Marsha Alford and said I was suspended.

I was unfairly suspended for seven days and when I returned I was asked by HR mgr. and Branch mgr. to sign a total fabrication document. They said my suspension was just a warning. I refused to sign. I never received a verbal warning or written warning and there was no reason for the suspension. The 2 black staff members were intentionally scheduled out of the meeting.

(ECF No. 18 at 4).

The defendant acknowledges that Title VII also prohibits retaliation against an employee who has "opposed any practice made an unlawful employment practice." *See* 42 U.S.C. § 2000e-3(a). The defendant further notes that the Supreme Court has broadly defined "oppose" to mean "to resist or antagonize . . . ; to contend against; to confront; resist; withstand . . . to be hostile or adverse to, as in opinion." *Crawford v. Metro. Gov't of Nashville & Davidson Cty., Tenn.,* 555 U.S. 271, 276 (2009). Thus, an employee's communication to an employer asserting employment discrimination "virtually always constitutes the employee's opposition to the activity." *Id.* at 276; *see also DeMasters v. Carilion Clinic,* 796 F.3d 409, 416-17 (4th Cir. 2015) (noting that the threshold for oppositional conduct under Title VII is not onerous).

As noted in the presiding District Judge's prior Memorandum Opinion and Order (ECF No. 36 at 13), to establish a prima facie case of retaliation under Title VII, a plaintiff must prove that: (1) he engaged in protected activity; (2) his employer acted adversely

against him; and (3) his protected activity was causally connected to his employer's adverse action. *Rhoads v. F.D.I.C.,* 257 F.3d 373, 392 (4th Cir. 2001); *see also Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 656 (4th Cir. 1998). Thus, [t]here is no question that directly complaining to an employer about a discriminatory policy is sufficient to constitute 'protected activity' for purposes of [a] Title VII claim." *Viscecchia v. Alrose Allegria LLC,* 117 F. Supp.3d 243, 256 (E.D.N.Y. 2015).

The defendant contends, however, that the plaintiff herein did not engage in "protected activity" because "such complaints must relate to an employment practice that the employee reasonably believes is unlawful." *Jordan v. Alternative Res., Corp.,* 458 F.3d 332, 338 (4th Cir. 2006)**,** *overruled on other grounds by Boyer-Liberto v. Fountainebleau Corp.,* 786 F.3d 264 (4th Cir. 2015) (en banc). (ECF No. 80 at 15). The defendant's Memorandum of Law in support of its Motion for Summary Judgment states:

> In this case, as set forth above, no objectively reasonable person could have believed that the Library's electronic communications policy and/or the April 27, 2012 email set imposed policy whereby only African-American employees were prohibited from using Library's computers for personal reasons during work time. Indeed, Plaintiff acknowledged that no such policy was ever explicitly stated. (Ellis 57). Rather, Plaintiff's objection was predicated solely on his own unsupported and unsupportable interpretation of the April 27, 2012 email. Accordingly, any objections voiced by Plaintiff at the November 28, 2012 staff meeting were not based on any "objectively reasonable belief" that the Library's electronic communications policy and/or the April 27, 2012 email violated Title VII and did not, therefore, constitute protected opposition activity.

(*Id.* at 16).

The plaintiffs Response asserts that he was told "he could speak and voice his concerns at the staff meeting by HR mgr. Alford and branch mgr. Smook, they were aware of this fact that I was going to speak about my concerns of discrimination in the work place." (ECF No. 84 at 8). The plaintiff further claims that, with respect to the

computer policy as discussed during the staff meeting, "it is very clear the RIGHTS of those in a protected class were being violated." (*Id.* at 9). He further asserts:

> When branch mgr. Smook finished speaking and it was time for staff to comment I began to question the restriction computer policy. As soon as I was beginning to speak I was interrupted by branch mgr. Dana Smook and was told we can speak about that in private and I told her this is what the monthly staff meetings are for. I WAS TOLD BY HR Mgr. Marsha Alford that I could speak at the meeting about my concerns during our last conversation. Mgr. Smook interrupted me as I began to speak I tried to explain to her that these meetings are for all staff members to voice their concerns. I repeated this is what the meetings are for. SHE ASK ME TO LEAVE THE MEETING. I immediately left the meeting saying I would filed a complaint. I was never disruptive.

(*Id.*) Thus, the plaintiff contends that Smook's actions were a violation of his rights, and resulted in the "staged event" of his suspension. (*Id.* at 10).

The defendant's Reply contends that the plaintiff has failed to "meet the substance of any of Defendant's arguments" and largely relies on "his unsupported contention that the November 28, 2012 staff meeting was "staged" and that Ms. Smook denied him the opportunity to speak." (ECF No. 85 at 6-7). The defendant further notes that the plaintiff's assertions in his Response are contradicted by his own deposition testimony, and by the characterization of his behavior by all of the other employees who were present, as set forth in their declarations. (*Id.* at 7). The Reply further states:

> Plaintiff admitted in his deposition that he has no evidence that he was suspended for any reason other than being loud and disruptive at the November 28, 2012 staff meeting. (Ellis 83-84). Because Plaintiff has not come forth with any evidence sufficient to create a genuine issue of material fact relative to the merits of his retaliation claim, that claim also fails as a matter of law.

(*Id.*)

Taking the facts in the light most favorable to the plaintiff, as the court must, the plaintiff's complaints about the computer use policy, when viewed under the

14

broad interpretation of the term "oppose," could establish the first prong of a Title VII retaliation claim concerning "protected activity." However, the plaintiff must also demonstrate that the action taken by the employer was "materially adverse to a reasonable employee." As noted by the defendant in its initial brief, and by the presiding District Judge's prior Memorandum Opinion and Order, a suspension that does not produce a materially adverse consequence to the employee may not be considered an adverse employment action sufficient to prove a retaliation claim under Title VII. (ECF No. 80 at 17; ECF No. 36 at 14 n.4). Numerous courts have held that a suspension <u>with pay</u> pending an investigation is not an adverse employment action. *See, e.g., Von Gunten, supra,* 243 F.3d at 869; *Peltier v. United States,* 388 F.3d 984, 988 (6th Cir. 2004); *Lacasse v. Didlake, Inc.,* 194 F. Supp.3d 494 (E.D. Va. 2016); *Renta v. County of Cook,* 735 F. Supp.2d 957, 973 (N.D. Ill. 2010) (all finding that paid suspensions are not actionable adverse employment actions, even in the context of retaliation). (ECF No. 80 at 17).

The plaintiff was placed on a seven-day, paid suspension while Ms. Alford investigated what happened at the November 28, 2012 staff meeting. Ultimately, she found that the plaintiff's behavior was inappropriate, and gave him a written warning, which, generally, will not constitute an adverse employment action. *See Jones v. Dole Food Co., Inc.*, 827 F. Supp.2d 532, 549-50 (W.D.N.C. 2011) (citing *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 651-52 (4th Cir. 2002) ("A written warning, without more, does not constitute an adverse employment action."). Thus, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff suffered no adverse employment action from his suspension and, therefore, he cannot establish a prima facie case of retaliation under Title VII concerning his suspension.

15

Accordingly, there is no genuine issue of material fact and the defendant is entitled to judgment as a matter of law on the plaintiffs Title VII retaliation claim.

## RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the defendant's Motion for Summary Judgment (ECF No. 79) and dismiss this matter from the docket of the court.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED,** and a copy will be submitted to the Honorable Thomas E. Johnston, Chief United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the plaintiff shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  *Snyder v. Ridenour,* 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn,* 474 U.S. 140 (1985); *Wright v. Collins,* 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce,* 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be provided to the opposing party and Chief Judge Johnston.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy of the same to the plaintiff, and to transmit a copy to counsel of record.


July 20, 2018

Dwane L. Tinsley
United States Magistrate Judge